**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MALAIKA WILLIAMS,

        **Plaintiff,**

versus

JPMORGAN CHASE BANK, N.A.,

        **Defendant,**

**Case No: 2:26-cv-01367-JFM**

## FIRST AMENDED COMPLAINT

## I. PARTIES AND OFFENSES

1. Plaintiff Malaika Williams (hereafter "Plaintiff") brings this action against JPMorgan Chase Bank, N.A. (hereafter "Chase") for the following conduct:

   - Violations of the Equal Credit Opportunity Act (ECOA), pursuant to 15 U.S.C. § 1691 et seq.

   - Violations of the Credit CARD Act (CAA), pursuant to 15 U.S.C. § 1637 et seq.

   - Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), pursuant to 73 P.S. § 201 et seq.

   - Violations of the Fair Credit Extension Uniformity Act (FCEUA), pursuant to 73 P.S. § 2270 et seq.

   - Violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.

- Fraudulent Misrepresentation

- Negligent Misrepresentation

- Unjust Enrichment

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal laws of the United States, including the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq., the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and the Credit CARD Act, 15 U.S.C. § 1637 et seq.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative facts.

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because Plaintiff resides in this district and a substantial part of the events giving rise to the claims occurred within this district.

## III. FACTUAL BACKGROUND

5. Plaintiff Malaika Williams opened a Chase Freedom Unlimited credit card account with Defendant JPMorgan Chase Bank, N.A. on or about November 2023. Upon approval, Plaintiff was issued an initial credit limit of approximately $4,800.

6. Plaintiff responsibly utilized the account consistent with its intended purpose as a revolving consumer credit product. Plaintiff made timely payments and maintained the account in good standing at all relevant times.

7. In or around June or July 2024, Defendant increased Plaintiff's credit limit to approximately $7,800, reflecting Plaintiff's satisfactory account performance, creditworthiness, and responsible repayment history.

8. Plaintiff relied upon the increased credit limit and Defendant's representations regarding continued access to revolving credit when incorporating the account into her ordinary financial planning and purchasing activities.

9. At the time Defendant reduced Plaintiff's credit line, Plaintiff maintained a strong payment history with no missed or late payments on the account. Plaintiff had not defaulted on any obligations and maintained satisfactory credit standing across multiple accounts. Despite these indicators of creditworthiness, Defendant nevertheless reduced Plaintiff's available credit without identifying any delinquency, default, or material deterioration in Plaintiff's financial profile.

10. Plaintiff consistently used the account for ordinary consumer transactions and either paid balances in full or remained current on all required payments. At no time was Plaintiff delinquent or in default on the account.

11. On or about September 24, 2025, Defendant issued a notice through Plaintiff's online banking account stating that Defendant had reduced Plaintiff's available credit limit to $4,600 following an internal review. This reduction constituted an adverse action and a material change to an existing credit arrangement.

12. Defendant provided only generalized and vague explanations for this adverse action, citing unspecified concerns regarding revolving balances without identifying any delinquency, default, or material change in Plaintiff's creditworthiness.

13. The reduction materially altered the terms of Plaintiff's existing credit arrangement by significantly decreasing available purchasing power and limiting Plaintiff's ability to utilize the account as previously permitted.

14. Plaintiff was not provided advance notice sufficient to allow her to meaningfully respond, adjust financial conduct, or reconsider her continued relationship with Defendant prior to the reduction taking effect.Instead, Defendant first reduced Plaintiff's credit limit and only afterward provided notice of the change through Plaintiff's online account.

15. As a direct result of Defendant's actions, Plaintiff experienced diminished access to credit, disruption of established financial practices, loss of anticipated rewards opportunities, and associated economic and emotional harm.

16. Following Defendant's reduction of Plaintiff's available credit, Plaintiff's overall credit utilization ratio immediately increased due to the sudden decrease in total available revolving credit. Because credit utilization is a significant factor considered by creditors and credit-scoring models, this change negatively affected Plaintiff's credit profile. As a direct and foreseeable consequence, subsequent credit card issuers independently reduced Plaintiff's credit limits after conducting periodic account reviews based on updated credit report information reflecting the reduced available credit.

## IV. CAUSES OF ACTION

### A. Violations of The Equal Credit Opportunity Act

### i. Discrimination

17. The ECOA makes it unlawful for creditors to discriminate against any applicant with respect to any aspect of a credit transaction because the applicant has in good faith exercised any right under the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.*,

15 U.S.C. § 1691(a). In a notice provided to Plaintiff through her online banking account dated September 24, 2025 (Attachment A), Chase stated that "[b]ased on a recent review, we reduced the credit line on this account to $4,600." *Id.*

18. Chase states, as the reason for this change in their existing arrangement, the following:

"We based our decision on the following reason(s): Balance owed on revolving accounts too high. Balances on accounts are too high compared to credit limits." Id.

19. Stated differently, Defendant based its decision to change the terms of the existing agreement on Plaintiff's exercise of credit options with other card issuers, with whom she never defaulted, as well as her exercise of the option to utilize the available credit issued by Chase. This is Plaintiff's right under the Consumer Credit Protection Act.

20. Sections that allow Plaintiff to carry an outstanding balance on her account, or that refer to a minimum payment and the time it takes to repay the balance, as well as others, clearly recognize this right of transaction between a card issuer, who permits such action, and the cardholder. To attempt to penalize Plaintiff for partaking in such action would violate the ECOA's discrimination prohibition. So similarly, it is a violation of this prohibition to penalize Plaintiff for simply paying her bill prior to the end of a billing cycle. See 15 U.S.C. §§ 1637 and 1666, respectively.

21. Thus, the Defendant is not permitted to take adverse action, such as a change in the terms of an existing credit arrangement, for exercising in good faith her right to contract with other creditors, utilize the limits of available credit, and pay the minimum balance; as well as utilize available credit permitted by an issuer and pay the full balance prior to the end of a billing cycle. This is especially true since such exercise has in no way caused any harm or prejudice to Chase to warrant such action.

22. The ECOA also prohibits creditors from discriminating with respect to any credit transaction "on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a). Chase is known among consumers for discrimination against people of color as it relates to matters such as those detailed by Plaintiff in this complaint.

23. There exist numerous posts and forums online in which people of color, particularly African Americans, report experiencing systematic penalization for engaging in permitted activity (such as spending large sums in a short period of time) utilizing their Chase cards. Such penalizations are not imposed on their non-ethnic peers. Those peers, some of whom post confirming these allegations, in many cases have financial payment histories and credentials that are equal to or inferior to those of people of color.

24. Plaintiff has experienced that same discrimination here. She has maintained a flawless payment history with Chase and other creditors. Despite this, Chase nevertheless chose to penalize her by decreasing her credit limit without just cause.

25. Plaintiff will put forth witnesses who will attest to these practices by Chase. This, coupled with anticipated discovery from Chase, will further elucidate this pattern of race-based discrimination, of which Plaintiff was a target, as part of a genuine issue of systematic behavior by the Defendant. See *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556) (stating that a claim is only required to contain enough factual matter to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements)

6

**B.Insufficient Notice**

26. Chase is undisputedly a creditor that took an adverse action against Plaintiff in the form of a reduction of available credit. Defendant's notices were insufficient for two reasons. First, the notice was provided without a compliant adverse-action disclosure containing the information required under the Equal Credit Opportunity Act and Regulation B. See 15 U.S.C. §1691(d)(2); 12 C.F.R. §202.9(a)–(b). Congress expressly distinguishes between traditional written notice and electronic delivery under the Consumer Credit Protection Act and related statutes.

For example, the Fair Credit Reporting Act explicitly differentiates among permissible forms of notice when adverse action is taken:

(a) Duties of users taking adverse actions on the basis of information contained in consumer reports. If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall—

(1) provide oral, written, or electronic notice of the adverse action to the consumer;

(2) provide to the consumer written or electronic disclosure—. 15 U.S.C. § 1681m(a)(1)–(2).

27. The second issue of insufficiency in association with the notices is that neither of them meets the requirements of Regulation B. Regulation B specifies that the written notice must contain: (1) a statement of the action taken; (2) the name and address of the

creditor; (3) a statement of the anti-discrimination provision codified in Section 701(a) of the ECOA; (4) the name and address of the federal agency that administers compliance concerning the creditor; and (5) a statement of specific reasons for the action taken. 12 C.F.R. § 202.9(a)(2). The statement of reasons must be specific and indicate the principal reason(s) for the adverse action. 12 C.F.R. § 202.9(b)(2).

28. In the adverse-action notice provided through Plaintiff's online banking account, Chase stated that "balance on revolving accounts too high" and "balances on accounts are too high compared to credit limits." (Attachment A).

29. This statement is exceedingly generic. Such generic statements are insufficient under the ECOA. "Statements that the adverse action was based on the creditor's internal standards or policies, or that the applicant failed to achieve a qualifying score on the creditor's credit scoring system, are insufficient." Id. It does not specify how many accounts, which account, the percentage of utilization that makes the balance too high relative to its limit, or any such relevant information. The only specific information given is how Plaintiff's actual FICO score is calculated by TransUnion, which Chase does not list as a reason for its decision.

30. The adverse-action notice also failed to comply with the specificity requirements of the Equal Credit Opportunity Act and Regulation B. Regulation B requires creditors to disclose the principal reasons for an adverse action with sufficient detail to allow the applicant to understand the basis of the decision. See 12 C.F.R. § 202.9(b)(2). Defendant's statement that "balances on revolving accounts are too high compared to credit limits" does not identify which accounts were considered, what utilization threshold Defendant deemed excessive, or what specific factor triggered the reduction. As a result, the notice failed to provide the meaningful explanation required by federal law.

31. Additionally, the letter does not give any specificity as to whether this balance was in regard to the revolving account with Chase or another creditor. Plaintiff is left to assume and therefore cannot properly challenge the notice with Chase in the manner Congress permits or intended.

32. Chase has never clarified in any policy made available upon contracting with them that she must keep utilization on any account at a certain level, nor that her credit score must at all times remain within a certain threshold. Nor have they advised Plaintiff that she may not utilize the credit on the account or that she would be penalized for doing so, even if Chase permits the transactions to occur. Plaintiff is neither delinquent with Chase nor with any other creditor. Thus, this explanation does not provide a prudent person with sufficient clarity regarding the mechanics of Chase's decision, which would allow her to adequately dispute the matter.

33. For the reasons stated above, the notices are insufficient under the ECOA and discriminate against Plaintiff, ultimately causing Plaintiff injury in the form of economic frustration (by limiting available funds Plaintiff is accustomed to for her normal standard of living), as well as emotional, mental, and physical distress in the form of anxiety, depression, loss of sleep, headaches, fatigue, and loss of concentration.

34. The ECOA requires a creditor to provide notice when the creditor takes adverse action against the applicant. 15 U.S.C. § 1691(d)(1); *Scott v. Fred Beans Chevrolet of Limerick, Inc.*, 183 F. Supp. 3d 691, 696 (E.D. Pa. 2016) (Dalzell, J.). The notice must provide the applicant with an explanation for the adverse action. 15 U.S.C. § 1691(d)(2); *Scott*, 183 F. Supp. 3d at 696. An adverse action is a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. 15 U.S.C. § 1691(d)(6). In sum, to state

a claim under the ECOA, a plaintiff must show that (1) Defendant is a creditor as defined by the ECOA, (2) Defendant took an adverse action against Plaintiff in the reduction of available credit (a change in an existing credit arrangement), and (3) Defendant provided notice with insufficient explanation as to why it took the adverse action. *Scott*, 183 F. Supp. 3d at 696.

35. When Defendant decided to change Plaintiff's available spending limit to $4,600, this triggered the advance 45-day written notice requirement under 15 U.S.C. § 1637(i). "Advance notice of significant changes required," and "a creditor shall provide written notice of any significant change not later than 45 days prior to the effective date of the change." Id. at § 1637(i)(2).This substantial reduction in available credit constituted a significant change in account terms triggering the advance notice requirement under 15 U.S.C. §1637(i).

36. This is not a trivial matter, as the purpose of the Act is to give individuals like Plaintiff the opportunity to cancel or modify their credit relationship before a significant change takes effect. Plaintiff relies on continued access to this credit, and such a substantial reduction materially affects her available purchasing power and financial planning. With a significant decrease in available credit, it is entirely reasonable—and within Plaintiff's statutory rights—to consider whether to cancel the affected account or other related accounts. Based on the foregoing, Defendant's conduct constitutes a violation of the CARD Act.

## C. State Statutory Claims

37. The Plaintiff is domiciled in Pennsylvania, which has a strong interest in protecting its citizens against tortious conduct." Laconis v Burlington County Bridge Com'n, 400 Pa

Super. 483, 583 A.2d 1218, 1223 (Pa. Super. Ct. 1990). "Pennsylvania has a strong interest in ensuring that its residents are protected from out of state corporations." McGraw v Glaxosmithkline, 2014 U.S. Dist LEXIS 6912, 2014 WL 211343, at *6 (3d Cir 2014) (citing Zubyk v LPBOC Hotel Ltd. P'shp, No. 00-971, 2000 U.S. Dist LEXIS 9671, 2000 WL 963168, at *11 (E.D.Pa. Jan 27, 2000)(Finding that a state "has an interest in protecting its residents with a means to redress injuries inflicted by out-of-state defendants."); See also Lewis v Bayer AG, 70 Pa. D. & C. 4th52, 2004 WL 1146692, at *12 (Pa. Com. Pl. 2004) (State consumer protection acts are designed to protect the residents of the state in which a deceptive act occurs or the individual resides and therefore the state where the individual resides has an overriding interest in applying the law of that state against corporations.). Courts have found that "[t]he general purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices." Neal v Bavarian Motors Inc., 2005 PA Super 305, 882 A.2d 1022, 1029 (Pa. Super. Ct. 2005). Therefore, Pennsylvania has at least a strong interest, if not more so, in utilizing the UTPCPL to protect consumers located within its jurisdiction from deceptive commercial practices.

**D. Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL)**

38. The UTPCPL is Pennsylvania's consumer protection law. Commonwealth v Chesapeake Energy Corp., 247 A.3d 934, 936 (Pa. 2021). It was "created to even the bargaining power between consumers and sellers in commercial transactions" and prohibits "unfair or deceptive acts or practices."Id (quoting Commonwealth by Shapiro v Golden Gate Nat'l Senior Care LLC, 648 Pa. 604, 194 A.3d 1010, 10123 (Pa. 2018)); 73 P.S. Section 201-3 (internal quotations omitted).

39. Defendant violated the UTPCPL pursuant to Sections 201-2(4)(v)–(vii). *Meyer v. Community College of Beaver County*, 606 Pa. 539, 2 A.3d 499, 505 (Pa. 2010) (recognizing that Sections 201-2(4)(v) through (vii) address claims involving nonconforming goods or services). Section 201-2(4)(v) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have."

40. Defendant advertised and promoted the Chase Freedom Unlimited Card as a revolving credit product providing dependable access to available credit, purchasing flexibility, and rewards benefits tied to ordinary and continued card usage. Plaintiff relied upon these representations when deciding to open, maintain, and regularly utilize the account as part of her financial planning and purchasing decisions.

41. Contrary to those representations, Defendant materially reduced Plaintiff's available credit without adequate justification or advance notice sufficient to allow Plaintiff to reasonably adjust her financial conduct. The reduction substantially impaired Plaintiff's ability to use the account as represented, including maintaining expected purchasing capacity and credit utilization levels. As a direct and proximate result of Defendant's conduct, Plaintiff suffered ascertainable losses, including diminished access to credit, disruption of financial planning, and adverse impacts associated with reduced available credit. Defendant's conduct therefore deprived Plaintiff of the advertised characteristics and benefits of the credit product in violation of the UTPCPL.

**E. Fair Credit Extension Uniformity Act**

42. Under the FCEUA, a creditor is "[a] person, including agents, servants or employee conducting business under the name of  creditor and within this Commonwealth, to whom a debt is owed or alleged to be owed." 73 P.S. Section 2270.3. A Creditor may not use any false, deceptive or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph: (ii) The false representation of the character, amount or legal status of any debt...(x) The use of any false representation or deceptive means to collect or attempt any debt to obtain information concerning a consumer. 73 P.S. Section 2270.4(b)(5)(ii) & (x).

**i. § 2270.4(b)(5)(x) and § 2270.4(b)(6)(i)**

43. When the Defendant changed the terms of the existing credit arrangement in order to force Plaintiff to alter her payment habits to one that would increase Defendant's earning potential from debt issued, such conduct is by all accounts deceptive in nature.

**ii. § 2270.4(b)(4)**

44. This section provides that "a creditor may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 73 P.S. § 2270.4(b)(4). The Defendant's adverse action of credit repression certainly discriminates against and oppresses Plaintiff. Likewise, the adverse-action notices provided—which are not in compliance with Regulation Z or the

13

Credit Card Accountability Responsibility and Disclosure Act— do not allow Plaintiff to effectively appeal.

### iii. § 2270.5

45. The enforcement provision of section 2270.5 provides "if a debt collector or creditor engages in unfair or deceptive collection acts or practices" like those Plaintiff outlines above, ""under this act, it shall constitute a violation of the UTPCPL. Kern v Leigh Valley Hospital., Inc. 2015 PA Super 19, 108 A.3d 1281, 1290 (Pa Super Ct. 2015). As discussed above, Chase has clearly violated provisions of the UTPCPL, and by doing so, has violated this provision as well.

### F. Truth in Lending Act

46. TILA requires creditors to disclose credit terms "accurately and meaningfully" to potential debtors prior to the extension of credit. 15 U.S.C. § 1601(a). Defendant made no such terms known or available to Plaintiff indicating that her account would be adversely affected in any way, particularly by a reduction in available credit or purchasing power, should she either (1) carry a balance with any non-Chase open credit plan, (2) utilize available Chase credit, or (3) pay her account balance in full prior to the close of a billing cycle. It was not until speaking with Chase representatives regarding actual acts of reduction that Plaintiff became aware of any such potential penalization for these actions.

47. Through the enactment of TILA, Congress sought "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to her and avoid the uninformed use of credit." *Id.* Plaintiff maintained her

14

Chase Freedom Unlimited account, remained a loyal Chase customer, and established an excellent payment history over a period of several years with the reasonable expectation of continued access to fairly administered credit terms, including stable credit availability and rewards benefits associated with responsible account usage. Rather than receiving the benefits reasonably expected from her demonstrated creditworthiness and account performance, Plaintiff was subjected to an unjustified reduction in available credit, undermining those expectations and the consumer protections TILA was designed to safeguard.

48. When a creditor violates a TILA obligation, the consumer may seek to rescind the transaction or recover actual and statutory damages. Id. §§ 1635(a), 1640(a). Plaintiff is entitled to recovery of damages based on Defendant's actions.

**G. Actual, Imminent Economic Injury and Future Injury**

49. To establish standing, a plaintiff must allege that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 30, 136 S. Ct. 1540, 1547 (2016). Plaintiff suffered concrete economic injury as a direct result of Defendant's conduct, including the material reduction of available credit, diminished purchasing capacity, loss of anticipated rewards earnings resulting from restricted spending ability, and disruption of established financial practices that relied upon previously available credit limits. These harms are directly traceable to Defendant's unilateral credit reduction and are redressable through judicial relief restoring damages and statutory remedies.

50. The Chase Freedom Unlimited Card no longer provides the level of usable credit access and purchasing flexibility represented by Defendant at the time Plaintiff opened and maintained the account. In deciding to obtain and continue using the card, Plaintiff reasonably considered its reliability as a revolving credit product, including consistent access to available credit and rewards benefits associated with ordinary consumer spending, as primary factors distinguishing it from other credit products on the market.

51. Courts within this Circuit have recognized that allegations of diminished value are sufficient to establish a concrete injury where a plaintiff plausibly alleges receipt of something less valuable than what was promised. *In re Mercedes-Benz Emissions Litigation*, No. 16-881, 2016 U.S. Dist. LEXIS 168535, 2016 WL 7106020, at *3 (D.N.J. Dec. 6, 2016). There, the district court explained that plaintiffs adequately plead injury under a benefit-of-the-bargain theory by alleging that they received a product that failed to function as intended or was objectively worth less than reasonably expected, citing *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010).

52. Here, Defendant's substantial reduction of Plaintiff's available credit materially diminished the utility and practical value of the account, depriving Plaintiff of the purchasing capacity and rewards-earning opportunity reasonably expected from the credit product. As a result, Plaintiff received a credit account of reduced value compared to what was represented and anticipated at the time the parties' credit relationship was formed.

**i. Benefit of Of The Bargain Theory**

53. The Chase Freedom Unlimited Card no longer meets the reasonable expectations of continued credit availability and rewards earning capacity represented by Defendant. This is despite Plaintiff demonstrating responsible account management for almost three years, consistently making timely payments and avoiding the carrying of balances at the close of billing cycles, even while maintaining substantial usage of the account. Defendant represents that responsible cardholders who maintain strong payment histories are rewarded with stable and meaningful access to credit. Contrary to those representations, Defendant materially reduced Plaintiff's available credit, thereby depriving Plaintiff of the expected benefits associated with responsible account performance. As a result, the benefit of the bargain reasonably anticipated by Plaintiff was not conveyed in accordance with Defendant's representations and established account practices.

**ii.Premium Price Theory**

54. Under the "premium price" theory of economic injury, Plaintiff has established injury in fact, under which a plaintiff may plead economic harm by alleging that a defendant marketed its product as superior to competing alternatives. *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Liability Litigation*, 903 F.3d 278 (3d Cir. 2018). Defendant advertised the Chase Freedom Unlimited Card as providing superior purchasing flexibility, dependable access to revolving credit, and enhanced rewards benefits compared to competing credit products. Plaintiff accepted and

maintained the account, including exposure to a higher applicable interest rate than alternative credit options available to her, in reliance upon those represented advantages. Plaintiff selected this specific credit product based on those characteristics and expected benefits. Had Plaintiff known that Defendant would materially restrict available credit and diminish the practical utility of the account, she would not have selected or continued using this product under those pricing terms.

55. The loss of the ability to utilize a high level of available credit has hindered Plaintiff's everyday life in that it has restricted her ability to make larger purchases, limited her financial flexibility, and deprived her of the expected rewards that come from high spending. The fact that the cards were marketed by Chase as tools for responsible individuals who desire high spending limits and the ability to earn abundant points, but has denied Plaintiff that opportunity, is deceptive.

56. "The injury in fact requirement is 'generous very' to claimants, demanding only that the claimant 'allege[] some specific, "identifiable trifle" of injury.'" *Cottrell*, 874 F.3d at 162 (quoting *Bowman v. Wilson*, 672 F.2d 1145, 151 (3d Cir. 1982)). In sum, the purchase fell short of expectations Plaintiff specifically bargained for.

## H. Fraudulent and Negligent Misrepresentation

57. Under Pennsylvania law, an action for intentional misrepresentation or fraud requires: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Office of Disciplinary Counsel v. Anonymous Attorney A*, 552 Pa. 223, 714 A.2d 402, 407

n.8 (Pa. 1998); see also RESTATEMENT (SECOND) OF TORTS § 525 (stating that "[o]ne who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to her by her justifiable reliance upon the misrepresentation.").

58. Defendant purposefully deceived Plaintiff into believing she would continue to receive a product that was substantially different from the one currently provided to her. She relied upon these misrepresentations when she continued to utilize and rely upon the card heavily and paid her balance in full in order to access its rewards. She did so as late as August 2025, immediately prior to Defendant lowering her credit limit.

59. If the Defendant seek to assert that they were somehow ignorant of the fraud, they still would be liable for negligent misrepresentation. In Pennsylvania, negligent misrepresentation is proven by: "(1) a misrepresentation of material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity, or must make the representation under circumstances in which she ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation." *Weisblatt v. Minnesota Mutual Life Ins. Co.*, 4 F. Supp. 2d 371, 377 (E.D. 1998); see also *Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 890 (Pa. 1994) (finding that "negligent misrepresentation differs from intentional misrepresentation in that to commit the former, the speaker need not know her or her words are untrue, but must have failed to make reasonable investigation of the truth of those words.").

60. The Defendant committed acts of fraudulent or negligent misrepresentation by promoting the product to Plaintiff in a way that caused her to believe she would receive the long-term benefit of the characteristics and advantages associated with it. Defendant knew that, shortly after accepting full payment, versus a minimum payment, they would deny Plaintiff those characteristics and benefits.

61. These representations of dependable access to revolving credit, continued purchasing flexibility, and advertised rewards availability were either falsely made or so recklessly unverified, as it pertains to Plaintiff, that the Defendant should have known of their falsity. They were presented to induce Plaintiff to purchase the product with the highest price point, including acceptance of a higher applicable APR in exchange for the represented benefits of the card. Plaintiff has not only suffered economic loss but has also endured measurable declines in mental, emotional, and physical health due to the ongoing frustration, stress, and disruption caused by Defendant's conduct.

**I. Unjust Enrichment**

62. Pennsylvania courts have held that "[u]njust enrichment' is essentially an equitable doctrine." Styer v Hugo, 422 Pa. Super. 262, 619 A.2d 347, 350 (Pa. Super. Ct. 1993)(quoting Wolf v Wolf, 356 Pa. Super. 365, 514 A.2d 901, 905 (Pa.Super. Ct. 1986)). The doctrine "permits recovery where the claimant can show that a benefit was wrongly secured or passively received, and that it would be unconscionable for the party receiving the benefit to retain it without payment." State Farm Mut. Auto. Ins. Co. v Jim Bowe & Sons, 372 Pa. Super. 186, 539 A.2d 391, 393 (Pa. Super. Ct. 1991). Under these circumstances, "the law implies a contract between the parties pursuant to which the plaintiff must be compensated for the benefits unjustly received by the defendant."

Styer, 619 A.2d at 350. The existence of such a "contract ...requires that a defendant pay the plaintiff the value of the benefits conferred."Id.

63. Under Pennsylvania law, unjust enrichment is proven by showing "(1) the benefits conferred on defendants by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable or defendant to retain the benefit without payment of value." Meye, Darragh, Buckler, Bebenek & Eck, P.P.L. v L. Firm of Malone Middleman, P.C., 645 Pa. 362, 179 A.3d 1093, 1102 (Pa. 2018)(brackets and citations omitted). For the purpose of such a claim, "'benefit' means 'any form of advantage'." Zvonick, 435 A.2d at 1241 (citing Restatement (first) of Restitution Subsection 1, cmt. B (1937)).

64. Plaintiff conferred a benefit upon Defendant through continued use of the Chase Freedom credit card, including transaction fees, interchange revenue, and other financial benefits generated from Plaintiff's account activity, which Defendant knowingly accepted and retained. In return, Plaintiff reasonably expected continued access to the credit privileges and rewards associated with the Chase Freedom card as advertised. It would be inequitable to permit Defendant to retain the financial benefits derived from Plaintiff's account while materially reducing Plaintiff's available credit and limiting the card's intended use. Defendant was unjustly enriched by retaining these benefits while diminishing the value of the services provided.

65. Pennsylvania also recognizes unjust enrichment claims brought as companions to tort claims in some instances. Whitaker v Herr Foods, Inc., 198 F.Supp. 3d 476, 492 (E.D. Pa. 2016). Thus, there are two categories of unjust enrichment claims under

Pennsylvania law. The first a quasi-contract theory of liability, in which case the unjust enrichment claim is brought as an alternative to a breach of contract claim. This has been discussed above. The second, a theory based on unlawful or improper conduct established by an underlying claim, such as fraud, in which case the unjust enrichment claim is a companion to the underlying claim. Id. (citing Zafarna v Pfizer, Inc. 724 F. Supp 2d 545, 561 (E.D. Pa. 2010); Torisha v Torisha, 346 Pa Super 229, 499 A.2d 581, 582 (Pa. Super. Ct. 1985)). With respect to the second theory, an unjust enrichment claim may be plead as a companion, not an alternative, to a claim of unlawful or improper conduct as defined by law-e.g., a tort claim." Id. at 493. "' In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of her tortious conduct, she will be unjustly enriched).'"Id(quoting Steamfitters Local Union No. 420 Welfare Fund v Philip Morris, Inc., 171 F.3d 912, 936 (3d Cir 1999). Plaintiff tort claims allow such a pleading as a companion here.

**J. Negligent Infliction Of Emotional Distress**

66. Under Pennsylvania law, a claim for negligent infliction of emotional distress requires a showing: "(1) the defendant had a contractual or fiduciary duty toward the plaintiff." *Runner v. C.R. Bard*, 108 F. Supp. 3d 261, 272 (E.D. Pa. 2015). The Defendant's actions have undoubtedly caused both ongoing emotional disturbance and physical harm to Plaintiff. Plaintiff continues to suffer from depression, nausea, insomnia, loss of continence, light sensitivity, and eye pain resulting from headaches, all as a result of mental anguish and physical pain. Plaintiff is currently utilizing holistic remedies, a

special diet, meditation, and exercise in an attempt to lessen the severity of these symptoms.

## V. CONCLUSION

67. Plaintiff requests a jury trial to prove the matter presented in this complaint.

## VI. RELIEF REQUESTED

68. Plaintiff requests that this court grant the following relief:

a. compensatory damages in the amount of $2,500

b. emotional and physical distress in the amount of $25,000

c. punitive damages in the amount of $50,000

d. Statutory damages in the amount of $10,000

e.All related court costs and litigation expenses;

f. Any additional relief this Court deems just and appropriate, including but not limited to injunctive relief, equitable restitution, and declaratory judgment.

Dated: March 3, 2026

Respectfully submitted,
By: /s/ Malaika Williams
Malaika Williams "Pro Se"

2639 Oakford St Philadelphia, PA 19146
(215)990-2905

amgoods91@gmail.com

23