IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MALAIKA WILLIAMS,

        *Plaintiff,*

    v.

JPMORGAN CHASE BANK, N.A.,

        *Defendant.*

CIVIL ACTION
NO. 26-1367

Pappert, J.                                                                       May 26, 2026

**MEMORANDUM**

*Pro se* plaintiff Malaika Williams sued JPMorgan Chase Bank, N.A. for reducing the credit limit on her account. She amended once as a matter of course and, after Chase moved to dismiss all claims, filed a second amended complaint. The Court struck that filing for not complying with Federal Rule of Civil Procedure 15(a), and Williams moved for leave to file a proposed second amended complaint. In that pleading, she alleges numerous violations of the Equal Credit Opportunity Act (Count I), the Credit CARD Act and the Truth in Lending Act (Count II), the Fair Credit Reporting Act (Count III), the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count IV), the Fair Credit Extension Uniformity Act (Count V), fraudulent and negligent misrepresentation (Count VI), unjust enrichment (Count VII), and negligent infliction of emotional distress (Count VIII). Chase opposed the motion, arguing amendment would be futile because Williams fails to state claims upon which relief could be granted.

The Court grants Williams's motion, denies the motion to dismiss as moot, and construes Chase's response in opposition as a renewed motion to dismiss, which is

1

granted.  Count I is dismissed without prejudice as to the claims under 15 U.S.C. § 1691(a) but with prejudice as to the claim under 15 U.S.C. § 1691(d)(1) and Regulation B.  Counts II, IV, V, VI and VII are dismissed without prejudice, and Counts III and VIII are dismissed with prejudice.

I

In November of 2023, Malaika Williams, a black woman, opened a Chase Freedom Unlimited credit card account.  (SAC ¶ 8, Dkt. No. 19-1.)  Chase issued her an initial credit limit of $4,800, which increased to $7,800 in mid-2024.  (*Id.* ¶ 13.) Williams contends she used her account responsibly and made all required payments on time.  (*Id.* ¶ 12.)  She purportedly relied on her credit limit in structuring her monthly expenses, earning cash back rewards, maintaining her "credit utilization ratio at levels consistent with a strong credit profile," and forgoing applications for competing credit products.  (*Id.* ¶ 14.)

On September 24, 2025, Chase sent Williams a letter through an online banking portal, stating it had "reduced the credit line on [her] account to $4,600."  (SAC ¶ 18); (Sep. 24, 2025 Letter from Chase to Williams at 2, Mot. Ex. A, Dkt. No. 19-2.)  Chase explained the balances she owed on revolving accounts were "too high," and the balances on her accounts were "too high compared to credit limits."  (Sep. 24, 2025 Letter from Chase to Williams at 2.)  The letter included details about the credit bureau and credit score used to make the decision, (*id.*), as well as an "EQUAL CREDIT OPPORTUNITY ACT NOTICE":

> The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the

2

> applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.  The federal agency that administers compliance with this law concerning this creditor is the Consumer Financial Protection Bureau, 1700 G Street NW, Washington, DC 20552.

(*Id.* at 4.)  Chase also instructed Williams to provide any new information to help reevaluate the decision, (*id.* at 2), which she never did.

By decreasing her credit limit, Chase purportedly increased her credit utilization ratio, caused other issuers to reduce her credit limits, limited her ability to earn unlimited cash back rewards and other benefits, and inflicted "physical and emotional harm," such as depression, anxiety, insomnia, headaches, nausea, and loss of concentration.  (SAC ¶ 25.)  She accuses Chase of violating various federal and state laws and tries to support her claims with "CFPB official research" regarding credit line decreases for consumers of color, similar cases against Chase, and legal scholarship on discrimination in banking.  *See generally* (Evid. of Pattern of Discrimination, Mot. Ex. B, Dkt. No. 19-2).

II

Federal Rule of Civil Procedure 15(a) provides that "the court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  District courts generally do so where the plaintiff can cure the defects in the pleadings and state a valid legal claim.  3 *Moore's Federal Practice* § 15.15[3] (2026).  Refusing leave to amend is inappropriate "unless it is beyond a doubt that there are no facts to support relief." *Id.*  That standard "is especially true for *pro se* plaintiffs, for whom the court should grant leave at least once if there is any indication of a valid claim."  *Id.*

3

Williams is a *pro se* plaintiff, and it's not clear, beyond a doubt, that no facts could support relief, *see infra* Parts IV–X.  The purpose of pleading "is to facilitate a proper decision on the merits," *see Kiser v. Gen. Elec. Corp.*, 831 F.2d 423, 427 (3d Cir. 1987) (citation omitted), and the Court has yet to address the merits of her claims.  The proper vehicle for assessing Chase's arguments about futility is a motion to dismiss under Rule 12(b)(6), not a motion for leave to amend under Rule 15(a).  *See City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 879 (3d Cir. 2018).  Otherwise, the First Amended Complaint—which Williams no longer stands by—would be the operative pleading, and the Court would have to revisit claims she now seeks to amend.

### III

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  Step one is to "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675).  Next, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of

truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, for all "well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).  If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint.[1]  *Twombly*, 550 U.S. at 570.

IV

Williams first alleges Chase violated the ECOA by: (1) discriminating against her because of her race, (2) retaliating against her for exercising her consumer credit rights and (3) providing a deficient adverse action notice.  (SAC ¶¶ 30–32.)

A

The ECOA makes it unlawful for creditors to "discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age."  15 U.S.C. § 1691(a)(1).  To state an ECOA claim, a plaintiff must allege she: (1) was a member of a protected class, (2) applied for credit from the defendant, (3) was qualified for the credit and (4) was denied credit despite her qualifications.  *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 268 n.5 (3d Cir. 2010) (citation omitted).

Williams fails to allege facts which could satisfy (2), (3) or (4).  First, she never requested a credit limit increase.  Chase "unilaterally increased" her credit limit from

---

[1]     Chase argues its motion to dismiss should be granted as uncontested because Williams did not respond or file a notice of intent to amend the First Amended Complaint within fourteen days. *See* (Def.'s Resp. in Opp'n at 10–11 (citing Loc. R. Civ. P. 7.1(c)), Dkt. No. 20).  Chase is correct that Williams filed her motion after the fourteen-day limit had expired but, considering her *pro se* status, the Court will not deny her motion as untimely or grant Chase's motion as uncontested.

$4,800 to $7,800, which it then "unilaterally reduced" to $4,600.  (SAC ¶¶ 13, 15); *Hawkins v. Cmty. Bank of Raymore*, 761 F.3d 937, 941 (8th Cir. 2014) ("The plain language of the ECOA unmistakably provides that a person is an applicant only if she requests credit.").  Second, she conclusorily alleges she had "an unblemished payment history" and met "every objective marker of creditworthiness."  (*Id.* ¶¶ 20, 30); *Harp v. Bank of Am.*, No. 24-CV-6721, 2025 WL 1047713, at *3 (E.D. Pa. Apr. 8, 2025) (rejecting an ECOA claim where the plaintiff alleged his creditworthiness "in conclusory terms").  Third, she claims, without any factual support, that Chase's stated reasons were "pretextual," similarly situated nonminority cardholders did not receive the same treatment as she did, and Chase engaged in a pattern of discriminatory credit limit reductions.  (SAC ¶¶ 21, 30); *Shahin v. PNC Bank*, 625 F. App'x 68, 70–71 (3d Cir. 2015) (per curiam) (rejecting an ECOA claim where the plaintiff did not provide nonconclusory allegations sufficient to establish discrimination).  She also describes other cases where Chase purportedly discriminated against customers of color and legal scholarship on its credit limit practices.  *See generally* (Evid. of Pattern of Discrimination).  None of that "evidence" suggests Chase discriminated against her.

B

Nor does Williams state a claim under § 1691(a)(3).  To do so, she must show: "(1) [she] exercised in good faith (2) a right under the Consumer Credit Protection Act, and (3) as a result, the creditor discriminated against [her] with respect to the credit transaction."[2]  *Harp*, 2025 WL 1047713, at *3 (alteration in original) (quoting *Bowen v. First Fam. Fin. Servs., Inc.*, 233 F.3d 1331, 1335 (11th Cir. 2000)).

---

[2]      Some district courts analyze § 1691(a)(3) claims using the same test as for § 1691(a)(1).  *See, e.g., Louis-Jean v. Westlake Fin. Servs.*, No. 22-cv-5702, 2024 WL 3904575, at *3 (D.N.J. Aug. 22,

6

Williams does none of that.  She never demonstrates how she acted in good faith beyond conclusory assertions of her creditworthiness.  *See* (SAC ¶¶ 20, 30).  She claims the cardholder agreement gave her "[t]he right to carry a revolving balance and make minimum payments," (*id.* ¶ 31), but the ECOA creates "no right to a consumer credit transaction," *Louis-Jean*, 2024 WL 3904575, at *3.  And nowhere does she identify a credit transaction that caused Chase to retaliate against her.  *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 406 (6th Cir. 1998) ("In determining the existence of discrimination, courts should look at the creditor's motives or conduct in individual transactions . . . ." (citation modified)).

C

Williams also insists, incorrectly, that Chase provided her with a deficient adverse notice.  The ECOA requires a creditor to notify an applicant of its action on an application "[w]ithin thirty days . . . after receipt of a completed application for credit." 15 U.S.C. § 1691(d)(1).  If a creditor takes an adverse action against an applicant, which includes the "denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested," the ECOA and its implementing regulation, known as Regulation B, "require the creditor to send a written notice to the applicant." *Dieffenbach v. RBS Citizens, N.A.*, 514 F. App'x 125, 128 (3d Cir. 2013) (quoting 15 U.S.C. § 1691(d)(6) and 12 C.F.R. § 202.9(a)(1)(iii)).

---

2024); *Pettineo v. GE Money Bank*, No. 10-2569, 2011 WL 1163308, at *3 (E.D. Pa. Mar. 30, 2011). The Third Circuit Court of Appeals has only addressed the elements of a § 1691(a)(1) claim, *see Chiang v. Veneman*, 385 F.3d 256, 259 (3d Cir. 2004), and § 1691(a)(3)—not (a)(1)—mentions an applicant's good faith in exercising protected rights.  Either way, Williams's conclusory assertions of discrimination and retaliation don't state ECOA claims.

Regulation B states a written notice must contain: "(1) a statement of the action taken, (2) the name and address of the creditor, (3) a statement of the antidiscrimination provision codified in § 701(a) of the ECOA, (4) the name and address of the federal agency that administers compliance concerning the creditor and (5) a statement of specific reasons for the action taken." *Id.* (citation modified) (citing 12 C.F.R. § 202.9(a)(2)).  The statement of reasons "must be specific and indicate the principal reason(s) for the adverse action." *Id.* (quoting 12 C.F.R. § 202.9(b)(2)).

The September 24, 2025 letter from Chase to Willaims met each of these requirements.  The notice was in writing,[3] stated Chase's decision to decrease Williams's credit limits, provided the name and address of the creditor, set forth the antidiscrimination provision of the ECOA, informed Williams of the name and address of the federal agency that administers compliance concerning Chase, and contained specific reasons for its decision.  (Sep. 24, 2025 Letter from Chase to Williams at 2, 4); *Dieffenbach*, 514 F. App'x at 128 (finding a written notice with the same information satisfied the ECOA and Regulation B).

V

Williams next accuses Chase of violating the Credit CARD Act by not providing her forty-five-day advance notice[4] and the Truth in Lending Act by not making certain disclosures when she opened her account.  (SAC ¶¶ 35–37.)

---

[3]   Williams believes Chase should have sent her the notice by mail, *see* (SAC ¶ 18), but the ECOA and its implementing regulations don't require that method of service.  To the contrary, Chase provided her the notice, in writing, through her online banking portal.  (*Id.* ¶¶ 15, 18.)

[4]   Williams also alleges the statute required Chase to include a statement informing her of the right to reject the credit reduction.  (SAC ¶ 36 (citing 15 U.S.C. § 1637(i)(5)(A)).)  The Credit CARD Act has no such requirement, nor does § 1637(i)(5) exist.

A

The Credit CARD Act requires creditors to provide cardholders with written notice forty-five days in advance of "any significant change" to the terms of their credit account.  15 U.S.C. § 1637(i)(2).  The Act's implementing regulation, known as Regulation Z, defines a "significant change in account terms" as "a change to a term required to be disclosed under 12 C.F.R. § 226.6(b)(1) and (b)(2), an increase in the required minimum periodic payment, a change to a term required to be disclosed under § 226.6(b)(4), or the acquisition of a security interest." *Dieffenbach*, 514 F. App'x at 129 (citation modified) (quoting 12 C.F.R. § 226.6(c)(2)(ii)).

Williams believes a 41 percent reduction in available credit "unquestionably constitutes a 'significant change' in account terms," (SAC ¶ 35), but she never points to any particular provision of the Credit CARD Act or Regulation Z indicating as much, *Dieffenbach*, 514 F. App'x at 129 (rejecting a claim under the Credit CARD Act where a plaintiff did not cite a provision in support).  Nor are any of the examples in the statute or regulation similar to what she alleges.[5]  *See* 12 C.F.R. § 226.6(c)(2)(ii).

B

The purpose of TILA is "to assure meaningful disclosure of credit terms so that the consumer will be able to compare . . . the various credit terms available to [her] and avoid the uninformed use of credit and to protect the consumer against inaccurate and

---

[5]    The closest example in Regulation Z states:
     For open-end plans that are not subject to the requirements of § 226.5b, if a creditor decreases the credit limit on an account, advance notice of the decrease must be provided before an over-the-limit fee or a penalty rate can be imposed solely as a result of the consumer exceeding the newly decreased credit limit.  Notice shall be provided in writing or orally at least 45 days prior to imposing the over-the-limit fee or penalty rate and shall state that the credit limit on the account has been or will be decreased.
12 C.F.R. § 226.9(c)(1)(vi).  But Williams never contends Chase imposed an over-the-limit fee or a penalty rate on her account.

unfair credit billing and credit card practices." 15 U.S.C. § 1601(a) (citation modified). Before opening an account under an open-end consumer credit plan, the creditor shall disclose to the person to whom credit is to be extended:

    (1)    The conditions under which a finance charge may be imposed;

    (2)    The method of determining the balance upon which a finance charge will be imposed;

    (3)    The method of determining the amount of the finance charge;

    (4)    Where one or more periodic rates may be used to compute the finance charge, each such rate, the range of balances to which it is applicable, and the corresponding nominal annual percentage rate;

    (5)    Identification of other charges which may be imposed as part of the plan, and their method of computation, in accordance with regulations of the Bureau;

    (6)    In cases where the credit is or will be secured, a statement that a security interest has been or will be taken;

    (7)    A statement, in a form prescribed by regulations of the Bureau of the protection provided by §§ 1666 and 1666i of this title to an obligor and the creditor's responsibilities under §§ 1666a and 1666i of this title; and

    (8)    Specific information regarding accounts where any extension of credit is secured by the consumer's principal dwelling.

*See* 15 U.S.C. § 1637(a).

None of those provisions apply to Williams's claims. She alleges Chase didn't "clearly and conspicuously" disclose the circumstances under which Chase could reduce her credit limit, (SAC ¶ 37), and nothing in TILA requires such a disclosure, *see* 15 U.S.C. § 1637(a).

## VI

Williams additionally brings an FCRA claim under 15 U.S.C. § 1681m(a), (SAC ¶ 42), but that provision "is not enforceable by private citizens," *Traore v. Equifax Info. Servs. LLC*, No. 25-2822, 2025 WL 1933712, at *2 n.4 (E.D. Pa. July 14, 2025) (citing 15 U.S.C. § 1681m(h)); *Perry v. First Nat'l Bank*, 459 F.3d 816, 823 (7th Cir. 2006) ("The unambiguous language of § 1681m(h)(8) demonstrates that Congress intended to preempt private causes of action to enforce § 1681m."); *Doe v. Charter Comm'ns, LLC*, 131 F.4th 323, 330 (5th Cir. 2025) (same); *Wood v. Third Fed. Sav. & Loan Ass'n*, No. 23-3042, 2023 WL 8174269, at *3 (6th Cir. Nov. 20, 2023) (same); *N'jai v. U.S. Dep't of Educ.*, No. 22-5243, 2023 WL 3848363, at*1 (D.C. Cir. June 2, 2023) (same).

## VII

William tries, unsuccessfully, to state claims under §§ 201–2(4)(v) and (vii) of the UTPCPL and under the FCEUA.

## A

The UTPCPL prohibits any person from engaging in "[u]nfair methods of competition and unfair or deceptive acts or practices," 73 Pa. Stat. & Cons. Stat. Ann. § 201–3, and provides a nonexhaustive list of such acts, *id.* § 201–2(4). Section 201–2(4)(v) forbids "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have." *Id.* § 201–2(4)(v). To state a claim, Williams must show: (1) a defendant made a false representation, (2) the representation "actually deceives or has a tendency to deceive" (3) the representation is "likely to make a difference in the purchase decision," (4) she justifiably relied on the defendant's act or practice, and (5) she suffered an

11

ascertainable loss as a result. *See Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009) (quoting *Fay v. Erie Ins. Grp.*, 723 A.2d 712, 714 (Pa. Super. Ct. 1999)) (listing first three elements); *Baker v. Fam. Credit Counseling Corp.*, 440 F. Supp. 2d 392, 412 (E.D. Pa. 2006) (citation omitted) (listing last two elements).

Williams does not satisfy these elements for four reasons. First, she alleges Chase advertised and marketed the Chase Freedom Unlimited card as "revolving credit" that provided "dependable access" for eligible card holders in good standing; represented that she would earn unlimited cash back on purchases; and increased her credit limit because of her creditworthiness. (SAC ¶ 47.) None of those representations were false. Chase continues to provide her with credit and cash back on purchases. *See* (*Id.* ¶ 15). It made no false representation by increasing her credit limit in mid-2024, and her complaints about Chase withholding information about its right to decrease her credit limit are conclusory. Moreover, "vague promises of cost savings and competitive rates" don't suffice under the UTPCPL. *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 416 (E.D. Pa. 2016).

Second, she never suggests how the purported misrepresentations actually deceived or tended to do so.

Third, she does not allege how the representation would make a difference in a purchasing decision.

Fourth, she does not plead an ascertainable loss. This element requires her "to point to money or property that [s]he would have had but for the defendant's fraudulent actions," and such damages "cannot be speculative." *McPartland v. Chase Manhattan Bank USA, N.A.*, No. 22-CV-284, 2022 WL 1810979, at *3 (M.D. Pa. June 2, 2022)

12

(citations omitted).  Williams claims a laundry list of "ascertainable losses," including lost credit, reduced cash back rewards, reductions by other issuers, and fees, interest or costs incurred.  (SAC ¶ 49).  Most of these allegations are only based on credit Williams could have used had Chase not reduced her credit limit, which is too speculative to constitute an ascertainable loss.  *See McPartland*, 2022 WL 1810979, at *3 (rejecting a diminished credit score as an ascertainable loss).  And she specifies no fees, interest or costs she incurred as a result of Chase's actions.

B

Section 201–2(4)(vii) proscribes "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  73 Pa. Stat. Cons. & Ann. § 201–2(4)(vii).  Williams supports this claim with the same allegations as her claim under § 201–2(4)(v), (SAC ¶ 47), which, for the reasons already stated, is insufficient.

C

Williams also tries to state a claim under the FCEUA, (SAC ¶¶ 51–56), but she can't do so because she failed to state claims for relief under the UTPCPL, *see Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015).

VIII

A

To state a fraudulent misrepresentation claim, a plaintiff must allege: "(1) a misrepresentation, (2) fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result."

13

*Petruska v. Gannon Univ.*, 462 F.3d 294, 310 (3d Cir. 2006) (quoting *Martin v. Lancaster Battery Co.*, 606 A.2d 444, 448 (Pa. 1992)).  Pleadings alleging fraud must "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), meaning a plaintiff must plead "either the date, place or time of the fraud or through alternative means give precision and some measure of substantiation to its allegations of fraud," *Bennett v. Itochu Int'l, Inc.*, 682 F. Supp. 2d 469, 479–80 (E.D. Pa. 2010) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)).

Williams points to similar statements as for her UTPCPL claim, none of which were misrepresentations.  *See* (SAC ¶ 59); *supra* Section VI.A.  She conclusorily alleges Chase "knew or was recklessly indifferent to the falsity of these representations," (SAC ¶ 60), and provides no date, place or time of the "fraud" or substantiation of her allegations.  Nothing suggests Chase harbored any intent to induce her to act, and her assertions of justifiable reliance are conclusory.  *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778–79 (3d Cir. 2018) ("[I]t is not enough simply to assert that a statement was fraudulent and that reliance upon it induced some action . . . ." (quoting *Blumenstock v. Gibson*, 811 A.2d 1029, 1038 (Pa. Super. Ct. 2002))).

## B

Nor does Williams state a claim for negligent misrepresentation.  To do so, she must show: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known of its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999) (citation omitted).

14

Again, Williams doesn't cite a misrepresentation Chase made.  *See supra* Section VI.A.  She alleges this claim "in the alternative, if Chase did not have actual knowledge of the falsity of its representations."  (SAC ¶ 62.)  She alleges no facts that Chase knew it made a misrepresentation or made a representation it should have known or didn't know was true or false.  Nothing in the Second Amended Complaint indicates Chase intended to induce others to act based on its purported misrepresentations, and Williams never mentions—let alone plausibly alleges—justifiable reliance.

IX

Williams also asserts an unjust enrichment claim, *see* (SAC ¶¶ 65–66), but the Court "may not make a finding of unjust enrichment . . . where a written or express contract between parties exists," *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999); *Wilson v. Parker*, 227 A.3d 343, 353 (Pa. 2020) ("[T]he doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract."); *Hein v. Feldmeier*, No. 25-cv-1140, 2026 WL 886371, at *10 (W.D. Pa. Mar. 31, 2026) (citation omitted). ("It is well-established in Pennsylvania that, where an express contract exists which governs the rights and liabilities of the parties, a claim for unjust enrichment is precluded." (citation omitted)).  As Williams knows, the cardholder agreement governs her relationship with Chase.  *See* (Sep. 24, 2025 Letter from Chase to Williams at 2, 4); (SAC ¶¶ 9–10, 69).

She tries to salvage her claim under a "tort-companion theory" "to her fraud and UTPCPL tort claims."  (SAC ¶¶ 64–65).  She relies on the same improper conduct as the underlying tort claims, (*id.*), which don't succeed for the reasons already stated, *see supra* Parts VII–VIII; *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 493 (E.D. Pa.

15

2016) ("Where the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim.").

X

Finally, Williams fails to state a claim for negligent infliction of emotional distress.  NIED arises in only "four factual scenarios: (1) the defendant had a contractual or fiduciary duty toward the plaintiff, (2) the plaintiff was subjected to a physical impact, (3) the plaintiff was in a zone of danger and reasonably feared impending physical injury, or (4) the plaintiff observed a tortious injury to a close relative." *Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 217 (Pa. Super. Ct. 2012) (citation omitted).

Williams bases her claim entirely on her contractual relationship with Chase. (SAC ¶ 69.)  NIED claims based on contract apply to "preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach."  *Toney v. Chester Cnty. Hosp.*, 36 A.3d 83, 95 (Pa. 2011). This includes relationships involving "the very sensitive and emotionally charged field of obstetrics," *see id.*, an EMS technician and a patient, *see Mulawka v. Pennsylvania*, 11-CV-1651, 2012 WL 6864596, at *13 (W.D. Pa. Nov. 28, 2012), *R. & R. adopted*, 2013 WL 171911 (W.D. Pa. Jan. 16, 2013), or an adoption agency and adoptee parents, *see Madison v. Bethanna, Inc.*, No. 12-CV-1330, 2012 WL 1867459, at *12 (E.D. Pa. May 23, 2012).  Beyond those scenarios, Pennsylvania courts "have refused to extend NIED liability any further." *Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 460 (E.D. Pa. 2014).  None of those circumstances are similar to the creditor-debtor relationship

16

between Williams and Chase. *See, e.g.*, *Hawkins v. Fed. Nat'l Mortg. Ass'n*, No. 13-cv-5058, 2014 WL 272082, at \*4 (E.D. Pa. Jan. 23, 2014) (refusing to apply NIED to a creditor-debtor relationship); *Grimaldi v. Bank of Am.*, No. 12-CV-2345, 2013 WL 1050549, at \*10 (M.D. Pa. Mar. 14, 2013) (same for a lender-borrower relationship).

XI

Courts should freely give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). For the reasons explained, Williams cannot allege any facts to state claims under 15 U.S.C. § 1691(d)(1), the FCRA, or NIED and thus amendment would be futile. That is not the case, however, for her claims under 15 U.S.C. § 1691(a) in Count I or Counts II, IV, V, VI and VII, so she may amend those claims consistent with this Memorandum and to the extent she can allege facts sufficient to state plausible claims for relief.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

17