**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MALAIKA WILLIAMS,<br>*Plaintiff,*<br>v.<br>JPMORGAN CHASE BANK, N.A.,<br>*Defendant.* | CIVIL ACTION<br>NO. 26-1367 |

**Pappert, J.** **September 9, 2026**

**MEMORANDUM**

*Pro se* plaintiff Malaika Williams sued JPMorgan Chase Bank, N.A., for reducing the credit limit on her account. Her Third Amended Complaint alleges violations of the Equal Credit Opportunity Act (Count I), the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count II), the Fair Credit Extension Uniformity Act (Count III), fraudulent and negligent misrepresentation (Counts IV and V), and unjust enrichment (Count VI). Chase moved to dismiss on grounds that Williams has still not stated any claims upon which relief can be granted. The Court grants the motion and dismisses the case with prejudice.

I

In November of 2023, Malaika Williams opened a Chase Freedom Unlimited credit card account. (TAC ¶ 5, Dkt. No. 26.) The card had an initial credit limit of $4,800 that Chase increased in mid-2024 to $7,800. (*Id.* ¶ 8.) Williams purportedly made all her payments on time and used her account responsibly. (*Id.* ¶ 17.) She also claims she relied on her credit limit to manage expenses, earned cash back rewards,

maintained her "credit utilization ratio at levels consistent with a strong credit profile," and withheld from applying for competing credit products. (*Id.* ¶ 9.)

On September 24, 2025, Chase sent Williams a letter through her online banking portal, explaining that it "reduced the credit line on [her] account to $4,600." (*Id.* ¶ 18); (Sep. 24, 2025, Letter from Chase to Williams at 2, Mot. Ex. A, Dkt. No. 26-1.) According to the letter, the balances she owed on revolving accounts were "too high," and the balances on her accounts were "too high compared to credit limits." (Sep. 24, 2025, Letter from Chase to Williams at 2.) Chase included details about the credit bureau and credit score used in the decision, (*id.*), as well as an "EQUAL CREDIT OPPORTUNITY ACT NOTICE," which explained that "The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race. . . ." (*Id.* at 4.) Chase encouraged Williams to report new information that could be used to reevaluate the decision, (*id.* at 2), which she never did.

Chase's decision to decrease Williams' credit limit purportedly increased her credit utilization ratio, caused other card issuers to reduce her credit limits, limited her ability to earn unlimited cash back rewards, and inflicted "depression, anxiety, insomnia, headaches, nausea, and loss of concentration as a direct result of Chase's conduct." (TAC ¶ 24.)

II

Complaints must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

*Twombly*, 550 U.S. at 556). Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Otherwise, courts dismiss under Rule 12(b)(6).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Step one is to "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675). Next, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, for all "well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint. *Twombly*, 550 U.S. at 570.

## III

Williams first alleges Chase violated the ECOA by discriminating against her because of her race. (TAC ¶¶25–32.) The ECOA forbids creditors to "discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). To state a *prima facie* case under ECOA, a plaintiff must allege she: (1) was a member of a protected class, (2) applied for credit from the defendant, (3) was

qualified for the credit and (4) was denied credit despite her qualifications. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 268 n.5 (3d Cir. 2010) (citation omitted).

Williams did not apply for a credit limit increase. Chase "unilaterally increased" her credit limit from $4,800 to $7,800, which it then reduced to $4,600. (TAC ¶¶ 8, 14). The ECOA defines "applicant" as anyone "who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b). Williams argues that she meets the definition of "applicant" under Regulation B, the statute's implementing regulation, and is therefore an "applicant" for purposes of the statute itself. (*Id.* at ¶ 26.) Under the regulation, applicant "means any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit." 12 CFR § 202.2(e).

Regulation B's definition does not apply. First of all, there is nothing ambiguous about "applicant" in the ECOA. *Moran Foods, Inc. v. Mid–Atlantic Mkt. Dev. Co., LLC*, 476 F.3d 436, 441 (7th Cir. 2007); *see also Carr v. Capital One Bank USA N.A., A Nat'l Banking Ass'n,* No. 1:21-cv-2300-AT-JKL 2021 U.S. Dist. LEXIS 259505, at *16-17 (N.D. Ga. Dec. 8. 2021) (refusing to apply Regulation B's definition to the ECOA because "applicant" is unambiguous). Even if the term could be construed to be ambiguous, the Court would not apply Regulation B's meaning. Courts apply the "best meaning" of ambiguous statutes. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400, 408-9 (2024). An agency interpretation of an ambiguous statute cannot bind a court even if that interpretation is persuasive. *Id.* at 402.

The statute lists all the direct and indirect forms of requesting credit that make an individual an "applicant." Williams did not apply directly to Chase to have, increase, or continue the $7,800 limit. Chase made all changes "unilaterally." (TAC ¶ 8.) Williams did not indirectly apply for increased credit by "exceeding a previously established credit limit," 15 U.S.C. § 1691a(b), because she purportedly "never exceeded her limit" on the credit card. (TAC ¶ 30.) And Williams has not alleged that she requested an extension, renewal, or continuation of credit from Chase. *See Hawkins v. Cmty. Bank of Raymore*, 761 F.3d 937, 941 (8th Cir. 2014) ("The plain language of the ECOA unmistakably provides that a person is an applicant only if she requests credit.").

IV

Williams again alleges claims under §§ 201–2(4)(v) and (vii) of the UTPCPL and under the FCEUA.

A

The UTPCPL prohibits any person from engaging in "[u]nfair methods of competition and unfair or deceptive acts or practices," 73 Pa. Stat. & Cons. Stat. Ann. § 201–3, and provides a nonexhaustive list of such acts, *id.* § 201–2(4). Section 201–2(4)(v) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have." *Id.* § 201–2(4)(v). To state a claim, Williams must show: (1) a defendant made a false representation, (2) the representation "actually deceives or has a tendency to deceive" (3) the representation was "likely to make a difference in the purchase decision," (4) she justifiably relied on the defendant's act or practice, and (5) she suffered an

ascertainable loss as a result. *See Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009) (quoting *Fay v. Erie Ins. Grp.*, 723 A.2d 712, 714 (Pa. Super. Ct. 1999)) (listing first three elements); *Baker v. Fam. Credit Counseling Corp.*, 440 F. Supp. 2d 392, 412 (E.D. Pa. 2006) (citation omitted) (listing last two elements). Williams still has not shown that any purported misrepresentations by Chase tended to deceive or caused an ascertainable loss of her property or money.

Williams again alleges that Chase (1) falsely advertised and marketed the Chase Freedom Unlimited card as "revolving credit" that provided "dependable access" for eligible card holders in good standing, (2) represented that she would earn unlimited cash back on purchases and (3) increased her credit limit because of her creditworthiness. (TAC ¶ 35.) But as the Court previously stated, those representations were not false. (May 26, 2026 Mem. Op. at 12, Dkt. No. 22.) Williams still has credit from Chase and receives cash back on purchases, (TAC ¶ 26), and Chase did not make a false representation by increasing the credit limit in 2024, (May 26, 2026 Mem. Op. at 12). Moreover, "vague promises of cost savings and competitive rates" don't suffice under the UTPCPL. *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 416 (E.D. Pa. 2016).

And Williams still has not pled an ascertainable loss. This element requires her "to point to money or property that [s]he would have had but for the defendant's fraudulent actions," and such damages "cannot be speculative." *McPartland v. Chase Manhattan Bank USA, N.A.*, No. 22-CV-284, 2022 WL 1810979, at *3 (M.D. Pa. June 2, 2022) (citations omitted). Williams lists a variety of "ascertainable losses," including lost credit, reduced cash back rewards, a reduced credit score, and reductions by other

issuers. (TAC ¶ 19, 39). Most of these allegations are only based on credit Williams would have had available to her had Chase not reduced her credit limit, which is too speculative to constitute an ascertainable loss. *See McPartland*, 2022 WL 1810979, at *3 (rejecting a diminished credit score as an ascertainable loss). And she still provides no specific fees, interest or costs she incurred as a result of Chase's actions.

B

Section 201–2(4)(vii) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." 73 Pa. Stat. Cons. & Ann. § 201–2(4)(vii). Williams' support for this claim is conclusory and she makes the same allegations as her claim under § 201–2(4)(v), (TAC ¶ 40), which, for the reasons already stated, is insufficient. And Williams cannot state a claim under the FCEUA because she failed to state claims for relief under the UTPCPL. *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015).

V

Allegations of fraud must "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), meaning a plaintiff must plead "either the date, place or time of the fraud or through alternative means give precision and some measure of substantiation to its allegations of fraud," *Bennett v. Itochu Int'l, Inc.*, 682 F. Supp. 2d 469, 479–80 (E.D. Pa. 2010) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)).

A

Williams has not stated a fraudulent misrepresentation claim. To do so, she must establish: "(1) a misrepresentation, (2) fraudulent utterance thereof, (3) an

intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result." *Petruska v. Gannon Univ.*, 462 F.3d 294, 310 (3d Cir. 2006) (quoting *Martin v. Lancaster Battery Co.*, 606 A.2d 444, 448 (Pa. 1992)). None of the statements Williams identifies are misrepresentations. She points again to allegations in her UTPCPL claim, including that (1) the Chase Freedom Unlimited card provided unlimited cash back rewards and dependable access to credit for responsible cardholders, (2) Chase reinforced this misrepresentation by increasing her credit limit from $4,800 to $7,800 and (3) Chase knowingly or recklessly made these misrepresentations with the intent to induce her to open her account and forego using competing credit products. (TAC ¶¶ 45–48); *See supra* Part IV.A. And nothing shows an intention by Chase to induce Williams to do anything. *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778–79 (3d Cir. 2018) ("[I]t is not enough simply to assert that a statement was fraudulent and that reliance upon it induced some action . . . ." (quoting *Blumenstock v. Gibson*, 811 A.2d 1029, 1038 (Pa. Super. Ct. 2002))); *see also Cleveland Bakers v. Mandel*, No. 24-5303, 2026 U.S. Dist. LEXIS 70024, at *31 (E.D.Pa. Mar. 30, 2026) ("One cannot defraud without making some sort of fraudulent misrepresentation or omission.")

B

Williams also does not state a claim for negligent misrepresentation, which requires: (1) a misrepresentation of a material fact; (2) made under circumstances in

which the misrepresenter ought to have known of its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999) (citation omitted).

Again, Williams fails to identify a misrepresentation. *See supra* Part IV.A. She raises this claim "in the alternative" to her fraudulent misrepresentation claim, (TAC ¶ 51), but offers little more than conclusory and speculative statements about Chase knowing it is "a sophisticated financial institution with full access to its internal credit policies" and other data, (*id.* ¶ 52). "A negligent misrepresentation claim requires 'an actual misrepresentation on the part of the defendant.'" *Mohn v. Cardona*, No. 22-773, 2022 U.S. Dist. LEXIS 41428, at *6 (E.D.Pa. Mar. 9, 2022) (quoting *Cooper v. Sirota*, 37 F. App'x 46, 48 (3d Cir. 2002)). As for her justifiable reliance on Chase's representations, Williams conclusorily states only that she "justifiably relied on them." (TAC ¶ 52.)

VI

Finally, courts "may not make a finding of unjust enrichment . . . where a written or express contract between parties exists," *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999); *Wilson v. Parker*, 227 A.3d 343, 353 (Pa. 2020) ("[T]he doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract."); *Hein v. Feldmeier*, No. 25-cv-1140, 2026 WL 886371, at *10 (W.D. Pa. Mar. 31, 2026) ("It is well-established in Pennsylvania that, where an express contract exists which governs the rights and liabilities of the parties, a claim for unjust enrichment is precluded.") (citation omitted).

As Williams knows, the cardholder agreement governs her relationship with Chase. *See* (Sep. 24, 2025 Letter from Chase to Williams at 2, 4); (TAC ¶¶ 12–13, 19, 35). She also styles the claim as a "companion to her tort claims," (TAC ¶ 54), but relies on the same alleged misrepresentations that are insufficient for the reasons already stated, *see supra* Parts IV–V; *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 493 (E.D. Pa. 2016) ("Where the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim.").

## VII

Federal Rule of Civil Procedure 15(a)(2) states the "preference for liberally granting leave to amend," unless "amendment would cause undue delay or prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Williams has amended her complaint three times and still has not stated viable claims against Chase. At this point, allowing her to try again would be futile and prejudicial to Chase.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
Gerald J. Pappert, J.